## DIRECTOR GENERAL OF RAILROADS v. REYNOLDS.

(Circuit Court of Appeals, Sixth Circuit. November 3, 1920.)

No. 3399.

1. **Negligence ☜136(8)—Question for jury, though evidentiary facts are undisputed.**

Though the evidentiary facts are not in dispute, a directed verdict cannot be required, unless the court can say that all reasonable minds must agree that there' was no negligence by defendant, or that there was contributory negligence by plaintiff.

2. **Railroads ☜275(3)—No lookout duty owing to trespassers.**

If employees of an adjacent factory, loading matter on cars on a switch track, were trespassers on or dangerously near the main track, the railroad company owed them no duty to keep a lookout.

3. **Railroads ☜282(9)—Negligent lookout for licensee a jury question.**

If persons loading building sections on cars on a switch track in such manner that they extended over or dangerously close to the main track were licensees, it was a question for the jury whether reasonable prudence required the keeping of a lookout.

4. **Railroads ☜275(1)—License dependent on customary use.**

Whether employees of an adjacent factory, loading building sections on cars on a switch track in such manner that they extended over or dangerously close to the main track, were trespassers or licensees, depended on whether there was such customary or permissive use of the main track or its danger zone as charged the railroad with knowledge of the danger and necessity for precautions.

5. **Railroads ☜282(9)—License to use of tracks by factory employees held a jury question.**

Evidence of the customary manner of loading and unloading cars on a switch track adjoining a factory *held* to make a question for the jury as to whether the loading of building sections in such manner that they extended over or dangerously close to the main track was under an implied license.

6. **Railroads ☜275(1)—Space opposite factory's loading platform cannot be divided, in passing on question of license.**

Where a switch track adjoining a factory's loading platform was 8 feet from the main track, with a safety zone of about 4 feet, the whole space opposite the platform must be treated as a unit in determining the question of license, and a distinction cannot be drawn as a matter of law between the loading and unloading space, or between the safety zone and the space beyond, into which employees might inadvertently go.

7. **Appeal and error ☜999(3)—Finding of negligence not disturbed.**

If the jury found an implied license to persons loading building sections on cars on the switch track, and found that it was the railroad company's duty to keep a lookout, its finding of negligence in failing to do so cannot be disturbed.

8. **Railroads ☜282(9)—Negligence as to persons loading cars held jury question.**

Where plaintiff was assisting in loading building sections on cars on a switch track in such manner that a section projected beyond the car, and was struck by a car on the main track, it was a question for the jury whether the railroad company should have anticipated that an injury might occur in that way.

9. **Railroads ☜275(3)—Licensees entitled to warning.**

If persons loading cars on a switch track in such manner that materials being loaded extended over or dangerously near the main track were li-

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

censees, they could depend upon the license as entitling them to a degree of warning which trespassers could not have required.

**10. Railroads ☜282(9)—Contributory negligence of persons loading car on switch track a jury question.**

Whether persons loading building sections on a car on a switch track, which projected over or dangerously near the main track, were guilty of contributory negligence, *held* a question for the jury.

In Error to the District Court of the United States for the Eastern District of Kentucky: Andrew M. J. Cochran, Judge.

Action by Leslie Reynolds against the Director General of Railroads. Judgment for plaintiff, and defendant brings error. Affirmed.

In connection with its factory, the Huntington Lumber & Supply Company maintained a loading and unloading platform 400 feet long alongside of the Norfolk & Western Railroad. Opposite half of this platform there were placed more or less constantly about eight box cars, from which lumber was being unloaded, and opposite the other half there were commonly standing about the same number of box cars, into which the finished product was being loaded. The main track of this portion of the railroad was parallel to the switch track, and 8 feet distant therefrom, from rail to rail. The overhang of the cars occupied about 2 feet on each side, and it follows that there was a safety zone of about 4 feet between passing cars upon the main track and the switch track. Part of the product of the lumber company consisted of sections for building into portable houses. These sections were 12 feet long, 4 feet high, and several inches thick, making a heavy and awkward article, for the loading of which four men were required. Along the front of the loading platform, close to the cars, stood a row of posts. In getting these long sections into an ordinary box car, it was necessary to swing one end as nearly parallel to the car as might be. Unless the car was in the precisely accurate position, these posts interfered with such swinging. It was therefore not uncommon for the loaders first to put a section through the car at right angles, so that, at the extreme, it temporarily projected 4 or 5 feet, reaching across the safety zone, if not beyond. Reynolds was an employee of the lumber company. He and another of the loading crew were inside of the car while the section was in the position just described; the other two of the crew were on the platform. As they were engaged in getting it placed and swung, the outer end was struck by a freight car on the main track, the inner end was swung back, catching Reynolds between it and the side of the car, and he received the injuries for which he brought this suit against the Director General. The issues of negligence and contributory negligence were submitted to the jury, which found for the plaintiff. The Director General now insists that a verdict should have been directed for him, because there was no evidence tending to show negligence by the railroad employees, and because Reynolds' contributory negligence appeared beyond dispute.

Just before the accident the freight car had been standing on the main track, perhaps 50 feet east of the car on which Reynolds was working. The greater part, if not the whole, of the switch track was occupied by cars being loaded and unloaded, and from time to time the switch engine was placing cars thereon and removing cars therefrom. At this moment the switch engine approached from the east on the main track, backing, intending to couple to the standing car. At the first impact, the coupler did not work, but the car was kicked along until it came within a few feet of the car Reynolds was loading. The engine came up again for the coupling, which was successfully accomplished; but before the engine and car had come to a stop the projecting section had been hit and the injury was done. It is to be taken as the fact from this record that the engine bell was ringing, but the jury was at liberty to conclude that, for a couple of minutes before the accident, there had been no lookout, either by any brakeman situated where he could see, or by any one on the engine looking back along the safety zone.

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Homer E. Holt, of Huntington, W. Va. (Holt, Duncan & Holt, of Huntington, W. Va., on the brief), for plaintiff in error.

Arthur T. Bryson and John W. Woods, both of Ashland, Ky. (Woods & Bryson, of Ashland, Ky., on the brief), for defendant in error.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] The principles which in this court govern such contentions have been stated too often to need elaboration. Even though the evidentiary facts may not be in dispute, it often happens that different minds draw different inferences therefrom, and whatever the conclusion of the judges might be, if they were triers of fact, it is only when they are able to say that all reasonable minds must agree that there was no negligence by defendant, or that there was contributory negligence by plaintiff, that they can require a verdict to be directed upon either of these grounds. Richards v. Mulford (C. C. A. 6) 236 Fed. 677, and cases cited on page 679, 150 C. C. A. 9, on page 11.

[2-4] If Reynolds were to be treated as a trespasser upon, or in dangerous proximity to, this main track, the railroad company would owe him, under these circumstances, no duty of lookout, and there would be nothing to show negligence. Cronopolous v. Pennsylvania Co. (C. C. A. 6) 259 Fed. 210, 170 C. C. A. 278. On the other hand, if he were to be treated as a licensee, doing his work in this way with the permission of the railroad, it would be equally clear that whether reasonable prudence by the railroad required a lookout would be a question for the jury. Whether he should be treated as a trespasser or licensee depends upon whether there was such a customary and permissive use by the lumber company employees of the main track or its danger zone as would charge the railroad with knowledge that they were likely to be in danger, and that precautions should be taken for their safety. Hodges v. Erie Co. (C. C. A. 6) 257 Fed. 494, 168 C. C. A. 498.

[5-8] If the claim that there was an implied license depended upon proof that these sections were customarily projected into the striking zone, and that the railroad employees knew it, or should have known it, there would be at least grave doubts whether the evidence should be thought sufficient, and we do not rest any conclusion upon this evidence alone. It appeared without question that the regular methods of unloading lumber and loading material which were in use on this day had been in use for a long time; that there were, customarily, 50 or more lumber company employees constantly engaged in this loading and unloading; that these sections were quite commonly extended, though only for a minute or two, out close to, if not into, the striking zone; that every car loaded was closed and marked by men working between the two tracks; that about half of the box cars which came in loaded with lumber (and most of the lumber came in box cars) were so loaded that the unloading work had to commence from the outside, or main track side, until enough of the load was removed to get at the other door from the inside of the car. This railroad crew had been

employed in this work for a considerable time, passing along many times a day, and they necessarily knew that the loading and unloading were done in the manner described. Knowledge of the unloading and the closing and marking of the cars is not disputed, and one or more of the train crew expressly admit knowledge of the method of loading these cars by projecting sections from the main track side, though they deny knowledge that any section ever extended far enough to get hit.

It is quite evident that men, in unloading lumber from the side of a box car, must commonly use more than four feet of space, and thus have commonly been upon the main track or within the striking zone. It is also evident that men, closing and marking cars, while they probably could always keep within the four-foot safety zone, would be very likely to overstep into danger; also, the danger that a section might be put out one or two feet more than was intended or strictly necessary must have been obvious to any railroad employee who saw this method of loading or handling that material. In other words, the railroad company is chargeable with knowledge that 50 or more lumber company employees were constantly working along this stretch of track, and that many of them were frequently along the safety zone where they were very close to danger, and that some of them were frequently actually upon the main track or in the danger zone. For the purposes of this question, we cannot draw, as matter of law, any nice distinction between that space where cars were being unloaded and the adjacent space where they were being loaded, nor between the four feet of supposed safety which the lumber company employees had the clear right to use and the few additional inches that they might inadvertently take.

We think the whole distance opposite the lumber company platform must be treated as a unit, and we cannot say, as matter of law, from this evidence, that the jury had no right to draw the inference that the lumber company employees were customarily in this position of danger or near danger by consent and with knowledge of the railroad company. If the jury, as trier of the fact, found such implied license, and, as another conclusion of fact, found that the railroad company's duty to take reasonable precautions for their safety was not satisfied without a lookout, there was lawful ground for the jury's finding of negligence and we cannot disturb it. The fact that, if there had been a lookout, he would have seen only the extended section, and would not have known whether it came too far, is not controlling; it would be for the jury to say whether there should have been an apprehension that an injury might occur of the type that did occur.

[9, 10] The question of contributory negligence must be considered from the same standpoint. If the jury found this implied license, it would follow that the lumber company employees could depend upon it to entitle them to a degree of warning which trespassers could not have required. Of course, it would have been more prudent for one of the loading crew to have been watching for trouble on the main track. Many might think that reasonable prudence so required; but the jury had a right to conclude that the projection of the section was intended to be only momentary, and that its extreme extent outwardly was inadvertent; that the ringing of the bell a little way up the track

was natural to the switching constantly going on, and would not necessarily indicate that a car was going to be kicked or pushed backward, without lookout, past this door at that very instant; and that, if Reynolds had looked out just before that, he would have seen only a stationary freight car a car length away, not coupled to an engine and with no engine near. Putting these things together, we think contributory negligence does not follow as matter of law, even if rather persuasively indicated as a conclusion of fact.

The judgment must be affirmed.