## EAGLE BIOLOGICAL & SUPPLY CO. et al. v. BREED.

No. 11964—Opinion Filed April 17, 1923.

Rehearing Denied May 22, 1923.

(Syllabus.)

1. **Druggists—Hog Cholera Serum—Negligent Manufacture—Evidence.**

Where the defendant manufactured an anti-hog cholera virus and serum and through its salesman administered the same to the hogs of the plaintiff, the mere fact that plaintiff's hogs died of cholera and that hogs in herds belonging to two other persons were treated with the virus and serum of the same series and a portion of them died, held not sufficient to establish negligence in the manufacture of the virus and serum or in its application.

2. **Same—Action for Death of Hogs—Sufficiency of Evidence.**

In a case where an action is brought against the manufacturer of anti-hog cholera serum for negligence in the manufacture and use of the serum which it is alleged resulted in the death of plaintiff's hogs, there must be evidence by which the negligence counted on is fairly and reasonably inferable. It is not enough to show accident and injury.

**3. Same—Vaccination by Salesman—Care Required.**

Where the company manufacturing anti-hog cholera serum permitted its salesman to vaccinate hogs, it was its duty to furnish a person who is reasonably skilled in performing the services which the company held him out as being qualified to perform, and such company would be liable for the failure of such agent to use the care and skill of an ordinarily prudent and skillful person performing like services.

**4. Negligence — Grounds — Submission of Issues.**

Where several grounds of negligence are charged, and there is an entire lack of proof on either, it is the duty of the court to withdraw such allegations from the consideration of the jury or, by proper instruction, to limit the jury to those allegations of negligence which are supported by the evidence.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by J. Roland Breed against the Eagle Biological & Supply Company and the Eagle Serum Company for damages. Judgment for plaintiff, and defendants bring error. Reversed and remanded, with directions.

C. D. Bennett, for plaintiffs in error.

Wm. A. Smith, for defendant in error

COCHRAN, J. This action was commenced by the defendant in error against the plaintiff in error to recover for the the death from hog cholera of certain hogs belonging to defendant in error. The parties will hereinafter be referred to as plaintiff and defendant, as they appeared in the trial court.

Plaintiff was the owner of a herd of Duroc hogs, and for a number of years had been accustomed to having his hogs vaccinated by W. J. Blowers, a salesman for the Eagle Biological & Supply Company, a corporation. The Eagle Biological & Supply Company manufactured the anti-hog cholera serum and virus which was used by W. J. Blowers, its salesman, in the vaccination of the plaintiff's hogs. Blowers vaccinated plaintiff's hogs with this serum and virus, and at the same time vaccinated them with hemmorrhagic septicemia bacterin. Within about nine days after the hogs were vaccinated, one or two of the hogs died, and quite a number were sick. The plaintiff called Mr. Blowers out to his place and had him make an examination of the hogs, and he concluded that they were suffering from a mixed infection to which the name of "flu" had been given, and insisted that the hogs should be vaccinated with a mixed infection bacterin. The plaintiff insisted that the hogs should be vaccinated with an additional amount of anti-hog cholera serum and virus, and Blowers did revaccinate a number of the hogs with the anti-hog cholera preparation, but all of them were not revaccinated, as he did not have a sufficient amount of the serum and virus with him for that purpose. The hogs continued to die, and the plaintill called the United States veterinarians in charge of the hog cholera work in this state to his place, and they, in company with Blowers, examined some of the dead hogs and pronounced the disease hog cholera, but was flu. The government experts administered a double dose of anti-hog cholera serum to the hogs. Plaintiff lost a number of hogs from the disease, and says that a number of others, which did not die, were injured as a result of the disease. The plaintiff relies for recovery on the following grounds: (1) That Blowers vaccinated the hogs in an unskillful, negligent, and improper manner by using serum and vaccine which was not of sufficient potency to offset the effects of the virus which was injected into the hogs; (2) that Blowers carelessly and negligently used and applied the serum in an improper amount and proportion in treating said hogs; (3) that Blowers carelessly and negligently diagnosed the disease among the plaintiff's hogs as flu and treated plaintiff's hogs for flu when in fact they were infected with cholera. Upon the trial of the case, a verdict was returned for the plaintiff. The defendant assigns as error the refusal to direct a verdict for the defendant and the giving of certain instructions.

It is not necessary to separately discuss the refusal of the trial court to direct a verdict, as the instructions given by the trial court submitted the case to the jury on each of the grounds mentioned and our ruling on these instructions will also dispose of the first assignment. The court instructed the jury as follows:

"You are instructed that if you find and believe from the evidence that the defendant Eagle Biological & Supply Company contracted with the plaintiff in this case to vaccinate his herd of hogs consisting of 114 head of hogs and to furnish the virus and serum in the said vaccination, then you are instructed that as a manufacturer of the vaccine products, that the defendant impliedly warrants that the products will be of reasonable potency and sufficiency for

the purpose intended, and in this connection you are further instructed that the burden is on the plaintiff to show that the serum in question was not of sufficient potency either in its intrinsic qualities or in the manner and under the circumstances used by the vaccinator, W. J. Blowers, and in this connection you are further instructed that if you find and believe from the evidence that the serum used was not of sufficient potency to counteract the virus used by the defendant in the vaccination of said hogs, and if you find and believe from the evidence that the serum in question was rendered impotent by the use of the bacterin injected at the time of the vaccination for hog cholera and that the said W. J. Blowers acted as the agent of the defendant company in applying the products of the defendant to the hogs of the plaintiff, and that in administering the said products the use of the bacterin at the time of the vaccination was improper and approximately caused the disease and loss, if any, to plaintiff's herd of hogs, and that in so administering the said bacterin the said Blowers did not exercise that degree of skill and knowledge that a reasonably prudent vaccinator in this locality would have exercised, and if you find and believe from the evidence that as a direct result of the impotency of the serum in its intrinsic quality, or that the defendant was negligent in applying the bacterin in connection with the virus and serum, as herein instructed, and the same proximately caused the injury and damage to plaintiff's herd of hogs as alleged, then your verdict will be for the plaintiff, unless you further find and believe from the evidence that the plaintiff was guilty of contributory negligence in that he improperly fed the hogs in question or otherwise negligently cared for the hogs in question, and thereby proximately caused the damage to plaintiff's hogs or that the loss was due to natural causes and through no negligence on the part of the defendant, in which event your verdict must be for the defendant."

It will be noted that the question of the insufficient potency of the serum was submitted by the trial court on the theory of implied warranty. The plaintiff contends that he was entitled to have that question submitted on that theory and also on the theory of negligence of the defendant in the manufacture and use of an impotent serum, and inasmuch as the two questions are very closely connected, although strictly speaking one involves a tort and the other involves a breach of contract, we shall consider whether this matter should have been submitted to the jury on either question. The plaintiff in his brief states as follows:

"In other words, we insist that the mere fact that the hogs were given cholera by an application of serum and virus, and that fact itself is proof of negligence in the manufacturer, without a showing that the defendant had any knowledge of any latent defect therein."

The plaintiff has assumed that the hogs were given the cholera by the application of the serum and virus. This is not such a case, that we can say from the mere fact that cholera broke out in the herd and resulted in the death of some of the hogs, that the hogs were given the cholera by the treatment or that negligence can be inferred from the death of the hogs by cholera. The burden of proof was upon the plaintiff to prove the negligence and that negligence was the proximate cause of the death of the hogs. The only testimony which could be considered as tending to prove that the serum was not of sufficient potency was the fact that cholera broke out in the herds of two other persons who used the serum of the same series, whereas the record shows that the same serum was used in numerous other herds with success. Before it could be said that the cholera in this herd was the result of the vaccination, it would be necessary to assume that the hogs had not already become infected with cholera before the treatment, and before it could be said that the serum was not of sufficient potency it would be necessary to assume that they were in normal condition and not suffering from any other disease which destroyed their power of resistance, that they were properly fed and cared for after the vaccination. We might just as reasonably conjecture that the death of the hogs resulted from some one or more of the above conditions as to conjecture that it occurred because of the inferior quality of the serum administered. There is no way to ascertain whether the cholera was caused by infection prior to the time the treatment was administered or resulted from the treatment. As said in the case of Brown v. H. K. Mulford Co. (Mo.) 199 S. W. 582:

"The sole fact on which negligence on the part of the defendant is predicated is that the hogs took sick with the symptoms of hog cholera and so many of them died. That all of them would be more or less affected by being vaccinated with this remedy, and that some would die therefrom was to be expected. It is said that no scientist or chemist has yet been able to detect any difference in the composition of the virus and the serum, the poison and the antidote the blood of a sick hog and the blood of one after it has recovered. Why one produces disease and death and the other arrests and cures is largely speculation.

Why some hogs apparently healthy and in the same herd and conditions are expected to die when the same treatment is given to all is a matter not explained, and doubtless not known. Much doubtless depends on the vitality and physical condition of the individual hog, and this is difficult or impossible to ascertain. It is pretty well established that in its incipient stages hog cholera cannot be detected, and when it has advanced to the stage where the symptoms are discernible, it is too late for most hogs to yield to the antidote or serum. This is true of the disease, whether resulting from the usual contagion or caused by the injection of the virus. We might conjecture, therefore, judging merely from results, that these hogs already had the disease in its incipient stage and the serum administered after the additional injection of virus could not counteract the disease. * * * These are mere conjectures, of course, but so, too, is it a mere conjecture that there was some negligence in the preparation of the virus used. The mere fact that injury resulted from the use of this virus in the way it was intended to be used is not sufficient to prove negligence in its manufacture. There must be evidence from which the negligence counted on is fairly and reasonably inferable. It is not enough to show accident and injury, but 'where all the facts connected with the accident fail to point to the negligence of the defendant as the proximate cause of the injury, but show a state of affairs from which an inference could as reasonably be drawn that the accident was due to a cause or causes other than the negligent act of defendant, the plaintiff can not rely' on the mere facts or 'circumstances, nor is the defendant called upon to explain the cause of the accident or purge itself of the inferential negligence.' "

To the same effect is Hollingsworth v. Midwest Serum Co. (Iowa) 162 N. W. 620.

The testimony in this case shows that the serum used was prepared in accordance with the act of Congress and was tested under government supervision according to the rules and regulations prescribed under the act of Congress. There was no attempt made to show any negligence in its manufacture, neither was there any evidence tending to show negligence in its use, other than the testimony above set out. The plaintiff insisted that the defendant was negligent because section 4, chap. 31, Session Laws of Okla. 1916, provides that the serum:

"Shall meet every necessary test for potency and protective qualification and freedom from such foreign organism as may cause infection or other disease"

—and defendant was negligent in not sufficiently testing the serum. This contention of the plaintiff is not supported by the evidence, as the experts testified that they knew of no other test except the actual use of the serum in the field. In that connection Dr. O'Connor testified that after the serum was prepared in strict conformity with government regulations, he knew of no method for determining that there was anything the matter with the serum except by its actual use in the field, and after treating this man's hogs and that man's hogs, to follow it up, visit the herds and see what the results were.

It is not necessary for the purpose of this case to pass upon the question of whether there was any implied warranty in the manufacture and sale of this serum. If an implied warranty that the serum was of reasonable potency did exist, it would have been necessary to show by the proof that the serum was not of reasonable potency, and, there being no proof in the record as to that fact, it is not necessary to further consider that question.

We are also of the opinion that it was error to submit to the jury the question of negligence of the defendant in administering the bacterin at the time of the vaccination of the hogs. We have carefully examined the evidence in connection with the contention of the plaintiff that the several experts introduced testified that the use of this bacterin was improper, and we think that the most that can be said of the testimony of these witnesses is that if the hogs were suffering with hog cholera, the proper treatment for the hog cholera would be a *double dose of virus and serum*, and that the bacterin would not be a proper treatment for that trouble, and also that in the opinion of some of these experts the use of the bacterin at the same time the serum was administered was a useless matter; but there is no testimony showing that any harm came from the use of bacterin, or that in the opinion of the experts it could come therefrom. In this connection it is well to bear in mind that at the time of the first vaccination the hogs were vaccinated with virus and serum and also with bacterin. At the time of the second vaccination, the hogs were vaccinated with bacterin and a portion of them were vaccinated with virus and serum.

We are of the opinion that since the defendant company sold the serum and bacterin and permitted its agent, Blowers, to vaccinate the hogs, it was its duty to furnish a person who was reasonably skilled in performing the services which the com-

pany held him out as being qualified to perform, and that there was sufficient testimony in connection with the acts of Blowers on his second trip to justify the court in submitting to the jury the negligence of the defendant in connection with the diagnosis and treatment of the hogs, and therefore the court correctly refused to instruct a verdict for the defendant.

Instruction No. 4, in which the court submitted the other questions of negligence and the question of breach of implied warranty, was erroneously given. Where several grounds of negligence are charged and there is an entire lack of proof on either, it is the duty of the court to withdraw such allegations from the consideration of the jury or, by proper instruction, to limit the jury to those allegations of negligence which are supported by the evidence.

Judgment is reversed, and cause remanded, with directions to grant a new trial.

JOHNSON, C. J., and KANE, KENNAMER, NICHOLSON, BRANSON, and MASON, JJ., concur.