MURPHY, Respondent, v. SIOUX FALLS SERUM CO., Appellant.

(195 N. W. 835.)

(File No. 5252. Opinion filed November 15, 1923.)

1. **Evidence—Opinion Evidence—Vaccination—Admission of Veterinarian's Opinion as to Hog Serum Contamination Held Error.**

   In an action against a serum company for death of hogs from vaccination with defective serum, admission of plaintiff's veterinarian's statement that he believed the serum as it came from defendant was contaminated was error, when the witness had not shown himself competent to give such opinion.

2. **Druggists—Evidence—Negligence—Proof of Death of Hogs Held Not to Sustain Verdict Against Serum Manufacturer.**

   In an action against a serum manufacturer for death of vaccinated hogs, mere proof of the deaths was insufficient to sustain plaintiff's verdict, since defendant's negligence was speculative and not proved to be the proximate cause.

3. **Appeal and Error—New Trial—Remand with Direction to Dismiss Held Proper, Where New Trial Would be Useless.**

   Where on second trial plaintiff's evidence failed to sustain his verdict, and no probability appears that a new trial would produce further evidence of defendant's negligence, the court having denied a directed verdict, the cause will be remanded with directions to dismiss, under Laws 1921, c. 181.

   Dillon, J., dissenting.

Appeal from Circuit Court, Bon Homme County, HON. R. B. TRIPP, Judge.

Action by Dennis Murphy against the Sioux Falls Serum Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Reversed and remanded, with directions.

*Lynch, Doyle & Smith,* of Sioux Falls, and *E. M. Bodding-ton,* of Kansas City, Kan., for Appellant.

*C. C. Puckett,* of Tyndall, and *Shull, Stilwill, Shull & Wad-den,* of Sioux City, Iowa, for Respondent.

(2) To point two of the opinion, Appellant cited: Joslin v. Linder, 26 S. D. 420; Thompson on Negligence, Sec. 7697 et seq.; Peterson v. Donlan, 172 N. W. 950; 20 Stand. Proc. 239; Antler v. Cox, 149 Pac. 701; Richards v. Mulford, 236 Fed. 677; 20 Stand. Proc. 323; Tompkins v. Quaker Oats Co. (Mass.), 1313 N. E. 456; Brown v. Mulford, 199 S. W. 582; Hollingsworth v. Midwest Serum Co., 162 N. W. 620; Richards v. Mulford, 236 Fed. 577; Pecheos et al v. Johnson, 179 Pac. 78.

(3) To point three of the opinion, Respondent cited: Rich-mire v. Elevator Co. (N. D.), 92 N. W. 819; Aetna Indemnity Co. v. Schroeder (N. D.), 95 N. W. 436; Welch v. N. P. Rail-way Co. (N. D.), 103 N. W. 396; Meehan v. N. P. Railway Co. (N. D.), 101 N. W. 183; Kerr v. Anderson (N. D.), 111 N. W. 614; Houghton Imp. Co. v. Vavrosky (N. D.), 109 N. W. 1024; Slocum v. New York Life Ins. Co., 228 U. S., 57 L. ed. 879; Cincinnati Ry. Co. v. Case (Ind.), 23 N. E. 797; Willard v. Al-bertson, 53 N. E. 1078; New Hampshire Fire Ins. Co. v. Wall (Ind.), 75 N. E. 669; Hammer v. State, 89 N. E. 850; Helmer v. Shevlin, 151 N. W. 421; Corrington v. Hancock, 23 Mo. App. 299; Pelican Co. v. American Co. (Tenn.), 126 S. W. 1085; Res-publica v. La Caze, 1 L. ed. 313.

GATES, J. This cause was before us upon a former appeal. 44 S. D. 421, 184 N. W. 252. Reference is made to that opinion. Upon retrial the jury again found for the plaintiff. From the judgment and order denying new trial, defendant appeals.

The action is for damages for the death of plaintiff's hogs from malignant edema, alleged to have been caused by anti-hog-cholera serum manufactured by defendant. The evidence showed that the veterinarian who administered the serum purchased it from defendant, of three serials, viz., A247, B10, and B12. Plain-tiff's hogs were treated in three pastures. It was in the east pasture only that any of plaintiff's hogs died. The serials B10 and B12 were used in the east pasture. The serial B12 was not, but the serial B10 was, used in the other pastures. Upon the

second trial the defendant showed (to use the language of the former opinion) that the serum had been prepared according to the approved method of preparing serum, that it had been carefully prepared and properly tested, bottled, sealed, and labeled, and that all reasonable care had been exercised to prevent any poisonous or deleterious matter from entering into the same. The defendant also showed that the serum had been manufactured under the immediate supervision of an agent of the Bureau of Animal Industry of the Department of Agriculture. It showed that the tests made at the plant had never revealed the presence of the germs of malignant edema in any serum there manufactured, and that it was a practical impossibility that such germs could have been in the serum, serial B.12, with which the hogs in the east pasture were inoculated.

[1] The evidence of the veterinarian who administered the serum tended to show the possibility, if not the probability, that the germs of malignant edema got into the serum, or into the instrument, or into the wound, during the process of vaccination. As an instance showing a possible source of contamination, he poured the serum into a glass tumbler and operated the hypodermic needle from that, whereas a method less likely to result in contamination is to insert the needle in a cannula through the cork of the bottle. It is true that the veterinarian was permitted to testify that in his opinion it was the serum as it came to him from defendant that was contaminated. Upon cross-examination, however, he admitted that his only reason for his opinion was that "I could not figure out any other way how it happened." The witness had not shown himself competent to give the opinion, and he should not have been permitted to give it. Again, the government inspector in charge of defendant's plant testified that he had used this serial on test pigs at the plant, and that there was no showing of malignant edema from the use of it. Such inspector gave the following testimony relative to the bacillus, malignant edema:

"This spore exists in dirt, feces of animals, in fact, in any place on the ground. The spore is long lived. It vegetates or grows only when it is excluded from the air and in deep puncture wounds. It does not grow in the blood stream of an animal and does not grow or vegetate in serum. This spore or bacillus

will grow if introduced into an animal through a deep wound. It is more likely to show on the serum side than on the virus side, for the reason that more tissue is displaced, and a larger amount is injected because of the inflammation which makes better media for the growth of the germ. Experiments have been carried on in connection of the isolation of the spore of this disease. It is commonly known that the disease can be caused by the injection of sterile water in an animal if the germ is on the skin. The spore or bacillus lives in dirt and on the ground, and is carried around by animals or people. When a puncture wound is made into the muscle and the air is excluded, it starts to vegetate."

[2] The record before us fails to reveal evidence of defendant's negligence other than the death of the hogs.

In Richards v. H. K. Mulford Co., 236 Fed. 677, 150 C. C. A. 9, an anthrax case, the court said:

"With the failure of this contention, plaintiff's case must wholly fail. Nothing remains to support it, save conjecture—and conjecture which, upon the whole, is essentially improbable. In our judgment, all reasonable men must agree that an inference of defendant's fault cannot safely rest on such premises."

In Hollingsworth v. Midwest Serum Co., 183 Iowa 280, 162 N. W. 620, a hog cholera case, the court said:

"We think, therefore, that the circumstances which we have here considered fall far short of sustaining a verdict either finding negligence of the defendant or that the alleged negligence was the proximate cause of the losses complained of."

In Brown v. H. K. Mulford Co., 198 Mo. App. 586, 199 S. W. 582, a hog cholera case, the court said:

"We might conjecture, therefore, judging merely from results, that these hogs already had the disease in its incipient stages, and the serum administered after the additional injection of virus could not counteract the disease; or, judging merely from results, we might conjecture that Dr. Winters, however honest in his beilef that he administered that remedy properly, made some mistake, misadventure, or miscalculation, as we know that administering too much of the virus or too little of the serum would result as this did. These are mere conjectures, of course, but so too, is it a mere conjecture that there was some negligence

in the preparation of the virus used. The mere fact that injury resulted from the use of this virus in the way it was intended to be used is not sufficient to prove negligence in its manufacture. There must be evidence from which the negligence counted on is fairly and reasonably inferable. It is not enough to show accident and injury."

In Eagle Biological & Supply Co. v. Breed (Okl.), 215 Pac. 424, a hog cholera case, the court held (quoting from the syllabi):

"In a case where an action is brought against the manufacturer of anti-hog-cholera serum for negligence in the manufacture and use of the serum which it is alleged resulted in the death of plaintiff's hogs, there must be evidence by which the negligence counted on is fairly and reasonably inferable. It is not enough to show accident and injury."

We are of the opinion that to permit the verdict to stand in this case would be contrary to reason. It can, and does, rest only on conjecture and speculation. There is no conflict in the evidence in this case. We think that plaintiff failed to sustain the burden that was upon him to prove that negligence of the defendant was the proximate cause of the injury.

[3] Inasmuch as this is the second trial, and the record excludes the probability of the obtaining of further evidence to show the contamination of the serum prior to its receipt by the veterinarian, and inasmuch as defendant, at the conclusion of the trial, moved for a directed verdict and later moved for judgment notwithstanding the verdict, we are of the opinion that the cause should be remanded to the trial court with directions to dismiss the action. Chapter 181, Laws 1921; Richmire v. Andrews & Gage El. Co., 11 N. D. 453, 92 N. W. 819.

It will be so ordered.

DILLON, J. (dissenting). This case was here on a former appeal, and this court on that appeal said:

"Plaintiff proved the use of the serum, that it had been properly administered, and the death of his hogs, and rested. Defendant then moved for a directed verdict. This motion was overruled, and we thing properly so. Plaintiff, by showing that the serum was properly administered, and that the malignant edema that caused the death of the hogs developed at the place

where the serum was injected into the hog, made out a prima facie case."

This must be held to be the law in this case.

I do not think the defendant has rebutted the prima facie case made by the plaintiff. The plaintiff had judgment in his favor on both the first and second trials, and, unless some error of law has occurred in this trial, he should be entitled to his judgment.

Defendant claims that it had met plaintiff's case by showing that the serum and virus were properly prepared and therefore could not contain the poisonous spores, and it then suggests it might be possible that the plaintiff used improper methods in administering the serum. The method of administering the serum was minutely shown, not only by the veterinary, but by those who assisted him. In every single instance the trouble commenced at the very spot where the serum was injected, and there was not a single case of infection where the virus had been used. The conclusion necessarily follows that the serum contained the poison that caused the death of the animals. The plaintiff having made a prima facie case, it became a matter for the jury and not for the court to say whether the appellant's evidence was to be accepted as true.

The defendant's plant is located in Sioux Falls, about one-half or three-quarters of a mile from the stockyards and about one-quarter of a mile from the Morrell Packing Plant. In the manufacture of the serum at defendant's plant the hogs were kept in a number of small pens. There is no testimony on the part of the defendant showing cleanliness of these pens. From this fact alone the jury might believe the contamination came from the pens or from the packing plant. The vessels used in the process of vaccination had been boiled and sterilized by the veterinarian. The wound was cleaned and was washed with iodine, and every precaution taken to prevent infection. The bottles were kept in the refrigerator with a temperature of about 40 degrees. The defendant, however, failed to show that any of the bottles were cleaned or sterilized before being stored.

Dr. Laird, supervisor of defendant's plant, came to defendant's farm. He picked up the bottles used in the three pastures where the hogs were vaccinated, evidently for the purpose of bac-

terial analysis of the remaining contents of these containers, but the results of such analysis if made were not revealed.

The regulations required that one of the three containers of the test sample should be held for at least six months for the purpose of showing test sample of such containers.

It is pertinent to ask, "What became of these test' containers?" and "What examinations were made to ascertain whether the solution contained these poisonous spores?" It appears that the contamination came from five containers, "serial B12," that had been shipped for use on plaintiff's hogs. Defendant's superintendent was at plaintiff's place, but he made no microscopic test or any post mortem examination of the dead hogs.

Dr. Sadler killed one of the hogs that was nearly dead and opened him up. He opened down toward the intestine, and it was found to be all dried up and burned brown. The blood was all burnt up. . The body of the hog was blackened where the serum entered.

This record presents a case of disputed facts for the jury to pass upon. To order a dismissal of plaintiff's case under these circumstances will deny the constitutional right of jury trial.

Note.—Reported in 195 N. W. 835. See, Headnote (1), American Key-Numbered Digest, Evidence, Key-No. 535, 22 C. J. Secs. 604, 609; (2) Druggists, Key-No. 10, 19 C. J. Secs. 66, 68; (3) Appeal and error, Key-No. 1176(6), 4 C. J. Sec. 3227.