ERICKSON, et al, Respondents, v. WEBBER, et al, Appellants.

(237 N. W. 558.)

(File No. 6978. Opinion filed June 23, 1931.)

*Parliman & Parliman,* of Sioux Falls, for Appellants.
*Lyon, Bradford & Grigsby,* of Sioux Falls, for Respondents.

ROBERTS, J. This action was commenced to recover damages for the death of plaintiffs' sheep, alleged to have been sustained by reason of the negligence of the defendants in compounding and administering a remedy for intestinal worms. The defendants are veterinarians engaged in the practice in the city of Sioux Falls and vicinity, and the plaintiff, Enoch Erickson, was the tenant of the three other plaintiffs named. The plaintiffs were the joint owners of the ninety sheep to which the remedy was administered by the defendants.

It appears from the evidence that the treatment was completed during the forenoon by defendant Webber, and that he then had dinner with the Ericksons. After dinner, the parties inspected the sheep which had been treated and found that some of them were dead, and according to the testimony of the plaintiff Erickson, others were lying on the ground with a greenish foam issuing from their mouths. During that afternoon and the following night forty-two of the sheep died, and nineteen more within a few days. Upon trial of the case, a verdict was returned for the plain-

tiffs. Defendants appeal from the judgment rendered thereon, and from order denying motion for a new trial.

■ A veterinarian, called as a witness by the plaintiffs on an assumed state of facts, was asked, "What would you say was the cause of the death of the sheep that died?" He answered: "Faulty administration of the medicine, or, in other words, the contents of the medicine must have gone into their lungs." The objection to the question was stated as follows: "This is not an instance where it is proper to interpose a hypothetical question. Counsel has before him the books and can examine the witness as to the proper treatment for worms from his experience and knowledge of the books, but it isn't a proper instance for a hypothetical question, and it is objected to on the further ground that it is not a fair statement of the testimony as it appears here at this time.' Counsel for defendants concede in their briefs "that this was a case within the domain of expert testimony," and do not urge on appeal the objection that it was not an instance where it was proper to interpose a hypothetical question. From our examination of the record, we are satisfied that there is testimony tending to prove the facts assumed in the question under consideration. The defendants also, on this appeal, contend that the question was an invasion of the province of the jury. We are of the view that the form of the objection was too general to call the trial court's attention to the precise point on which counsel relies. There was no intimation in the objection stated that counsel regarded the question as an invasion of the province of the jury. Crouch v. National Livestock Remedy Co., 205 Iowa 51, 217 N. W. 557; Howland v. Oakland Consol. St. Ry. Co., 110 Cal. 513, 42 P. 983.

■ The plaintiff Erickson was asked: "Q. Anything said about who was to blame for the death of the sheep?" "Q. What I asked you was what the doctor said with reference to the responsibility or blame for killing the sheep?" Another witness was asked the question, "What was the conversation as you recall?" These questions were objected to on the ground that they related to an offer of settlement. The law favors the settlement of disputed claims out of court, and an offer to compromise or settle a disputed claim will not be received as an admission of the party making the offer. Reagan et al v. McKibben et al, 11 S. D. 270,

76 N. W. 943; Busch v. S. D. Cen. Ry. Co., 29 S. D. 44, 135 N. W. 757. This rule, however, does not exclude the admission of distinct or independent facts, though they were made during the discussion of the compromise. Jones of Evidence, § 291; see note Ann. Cas. 1918E, 439.

"A distinct admission of a fact, made by a party during an attempt at compromise, may be given in evidence against the party making it, though an offer made for the purpose of effecting a settlement cannot. The reason is, that such admissions are in no way necessary to a treaty for a compromise, which is a mere attempt to buy a peace, and are supposed to be made, like other admissions, and for some one of the various causes which induce them." Rideout v. Newton, 17 N. H. 71, 73.

The questions were not objectionable for the reasons urged. No reference was made to an offer of a compromise or settlement.

 At the close of plaintiffs' evidence, the defendants moved for a directed verdict, and renewed the same at the close of the evidence. The overruling of such motion, and the insufficiency of the evidence to sustain the verdict, are assigned as errors. It is contended, in substance, that there was no causal connection between the alleged negligence in compounding or administering the remedy and the loss of the sheep; that the mere fact that sheep died was no evidence of any negligence on the part of the defendants; and that the evidence shows that the cause of the death of the sheep was and is unknown to the parties.

The burden of proof was upon the plaintiffs to prove negligence, and that the negligence was the proximate cause of the death of the sheep. The uncontradicted evidence was that the medicine was properly compounded, and the plaintiffs' case rested upon the charge of negligence in administering the remedy. Veterinarians were called as expert witnesses to testify with reference to the proper method of administering such medicine to sheep. It was the province of experts, under the circumstances, to say whether the treatment was or was not proper. Though the witnesses testifying as experts were not in entire accord, there was substantial testimony to the effect that, when a liquid, consisting of the ingredients used by the defendants in the treatment of plaintiffs' sheep, is not properly administered, fluid passes into the lungs and causes strangulation and almost certain death. This

testimony was substantiated by a reference to a treatise on diseases of sheep by a recognized authority and bulletins of the United States Department of Agriculture on the same subject. There was ample evidence to sustain the contentions of plaintiffs that the medicine was administered in a manner which, according to the opinion of experts, is usually fatal.

Unless it can be said that such negligence was the proximate cause of the death of the sheep, there can be no recovery. In other words, the evidence must show a causal connection between the negligence of the defendants and the loss sustained; the proof must establish causal connection beyond the point of conjecture. Murphy v. Sioux Falls Serum Co., 47 S. D. 44, 195 N. W. 835. The sheep in question were purchased by the plaintiffs a month or six weeks prior to the treatment. Defendant Webber at that time upon request of the plaintiffs made an inspection of the sheep and advised the prospective purchasers that the sheep were in good condition and recommended their purchase. There was testimony offered that tended to prove that such condition of the sheep continued to the time that they were treated by the defendants. Plaintiff Erickson testified that defendant Webber stated to him that, notwithstanding the lambs were in good condition, they should be treated; then he said to Webber, "What's the use of worming them?" To which reply was made, "Well, it will do them good—worm them—it makes them grow better and they do better." The sheep commenced to die within a short time after the treatment, and it is the undisputed evidence that there was a loss within twenty-four hours of approximately half of the number treated.

Defendants contend that the death of the sheep, and the rapidity thereof after the treatment, did not point to the negligence of the defendants as the proximate cause of the loss, and they rely upon Murphy v. Sioux Falls Serum Co., 47 S. D. 44, 195 N. W. 835, and cases cited therein. In each of these cases, the party defendant was the manufacturer of hog cholera virus, and it was claimed that there was negligence in the manufacture of the product used in the treatment of plaintiff's hogs. These cases are clearly distinguishable from the instant case. The treatment therein referred to was for the prevention of a highly contagious disease. In its incipient stages, hog cholera cannot be detected, and a high

death rate resulting from the use of a remedy for the prevention of hog cholera to apparently healthy hogs indicates a circumstance from which an inference could be reasonably drawn that the loss was due to the fact that hog cholera was present in its incipient stage at the time of the treatment, or that the loss was caused by the injection of a defective remedy. In the case of Brown v. H. K. Mulford Co., 198 Mo. App. 586, 199 S. W. 582, 584, which is cited and quoted with approval in Murphy v. Sioux Falls Serum Co., supra, it is said: "It is pretty well established that in its incipient stages hog cholera cannot be detected, and when it has advanced to the stage where the symptoms are discernible, it is too late for most hogs to yield to the antidote or serum. This is true of the disease, whether resulting from the usual contagion or caused by the injection of the virus. We might conjecture, therefore, judging merely from results, that these hogs already had the disease in its incipient stages and the serum administered after the additional injection of virus could not counteract the disease. * * * The mere fact that injury resulted from the use of this virus in the way it was intended to be used is not sufficient to prove negligence in its manufacture. There must be evidence from which the negligence counted on is fairly and reasonably inferable."

The evidence was sufficient to justify the trial court in submitting the question of negligence and of proximate cause of the death of the sheep to the jury.

The judgment and order appealed from are affirmed.

POLLEY, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.