### In the Matter of the ESTATE OF Mary EBERLE, Deceased.

### No. 18033.

Supreme Court of South Dakota.

Argued April 19, 1993.

Decided Sept. 8, 1993.

Rehearing Denied Oct. 15, 1993.

Charles L. Dorothy, Sioux Falls, for appellant Benjamin Eberle.

A.J. Swanson, Swanson and Hughes, Sioux Falls, for appellee Gretchen S. Taute.

Acie W. Matthews, Pruitt, Matthews & Jorgensen, Sioux Falls, for appellee Julie Ann Koester.

TUCKER, Circuit Judge.

Ben Eberle (Ben) appeals from an order which enforced the March 12, 1992, stipulation and agreement of the parties. We affirm.

### FACTS

Mary D. Eberle died January 27, 1983, survived by three adult step-children, Ben, Gretchen Taute (Gretchen), and Julie Koester (Julie). On March 14, 1983, Ben and Julie were appointed as co-executors of the estate. Mary's will left all of her assets to

Ben, Gretchen and Julie, share and share alike, including a farm in Brookings County appraised at nearly $370,000, cash and grain on hand. Some of Mary's blood relatives contested the will because an earlier will gave most of Mary's property to those relatives. The will contest was dismissed on January 10, 1984.

The three heirs agreed that they did not need further legal representation to handle the probate. Ben managed the estate assets.

In 1986 the three decided to operate the farm as a partnership, with each having a one-third interest. Ben persuaded Julie to sell her interest to him under a contract for deed. Ben and Gretchen continued to operate the farm as a partnership. In 1987 Ben and Gretchen had disagreements over how the farm was being managed which led Gretchen to hire counsel to petition for an accounting of Mary's estate. On December 4, 1987, the circuit court ordered accountings for 1984 and 1987.

These probate accountings raised questions as to how the estate was handled. Mary had given Ben a general power of attorney in 1979 to handle her business and financial affairs. At that time, Ben opened a checking account at Sun Bank in Sioux Falls under the name of Ben Eberle. This checking account then became the "estate" account which continued to be used by Ben until closed on August 10, 1987. Over $231,000 was deposited into the estate checking account, yet many of these deposits were not mentioned in any of Ben's accountings until 1991. Discovery also disclosed that Ben was "borrowing" from the estate account to buy various rental properties in Sioux Falls and a vehicle in his own name. Ben claimed these "loans" were repaid. Ben also acknowledged that "estate" funds and his own personal funds were both being deposited into the estate account.

Finally, the trial court revoked the letters testamentary of Ben and Julie. First National Bank of Sioux Falls was appointed administrator. On August 28, 1989, the trial court authorized Gretchen to bring an action for herself and for the benefit of the estate against Ben, his wife Marcia, and Julie, and the action was filed. Ben submitted a final

account on December 4, 1991. Gretchen filed objections to this final accounting and a hearing was set.

On March 11, 1992, the court began what was to be a three day hearing in the probate file on the accounting of Ben and Julie. Ben was put on the stand to explain his accounting method and the history of the estate and how it had been handled. Ben had been on the stand for a short period of time when he testified to depositing his personal funds into the estate account. Upon hearing of this commingling, the circuit court expressed concern that there might be some criminal activity going on and that Mr. Eberle should be advised of his Miranda rights.

A recess was taken. Ben met with his counsel and they outlined what they felt it would take to settle the case. Ben gave his attorneys the authority to negotiate a settlement. Counsel for the respective parties met later that afternoon and worked out a settlement and stipulation.

On March 12, 1992, counsel for all parties appeared before the court and orally recited the stipulation. The hearing was taken by a court reporter and a transcript of the hearing was later made. The stipulation as agreed to by counsel for all parties settled the probate proceeding and the related civil action.

The stipulation provided in part that Ben would quit claim his one-third interest in the estate farm to Gretchen Taute; that Gretchen would receive a two-thirds interest in the estate farm and Julie would receive a one-third interest in that farm through the final decree; that the contract for deed from Julie to Ben would be canceled; and that the civil action against Ben would be dismissed and a release signed. Other items of personal property were also divided. Any balance remaining in the estate was to be divided among Ben, Julie and Gretchen equally.

Counsel also agreed that a written stipulation and agreement would be presented to the court. Gretchen's attorney said he would be working on specific settlement agreements which would be submitted to the court. Over the next several months, the attorneys prepared various agreements, but Ben

changed counsel and refused to sign any of them.

Gretchen filed a motion to compel enforcement of the settlement. Ben then filed a motion to set aside the stipulation, thereby trying to avoid the settlement. On June 29, 1992, the court heard both motions. The trial court found that the March 12, 1992, stipulation was valid and that the parties were bound by the oral stipulation dictated onto the record. The trial court stated in conclusion of law 11 as follows:

> The Court concludes that Ben has failed of his burden that the stipulation should be set aside due to mistake of fact or law, duress, or the alleged failure of the Court to communicate with Ben on the matter of settlement and the stipulation in question. The stipulation was advanced, negotiated, and read into the record by counsel who were admittedly authorized by Ben to represent him in this matter. Both counsel were apparently well familiar with the risk of litigating this matter further. Both counsel were very able in the representation of Ben's interests throughout the several years that this Court has been familiar with the Estate.

Ben now appeals, raising several issues surrounding the oral stipulation.

## ISSUE ONE

WAS THE MARCH 12, 1992, ORAL AGREEMENT AND STIPULATION ENTERED ON THE RECORD SPECIFIC AND COMPREHENSIVE ENOUGH TO CONSTITUTE A CONTRACT?

Ben claims that the stipulated agreement was not definite and specific enough to evidence a meeting of the minds because the attorneys continued to negotiate for several more months before a final written stipulation was presented to the court. He therefore claims that the stipulation and agreement is not a valid contract.

■ Stipulations may be contractual and the law of contracts applies. *Aetna Life Ins. Co. v. Satterlee*, 475 N.W.2d 569 (S.D.1991). *See also* Restatement of Contracts 2d, *Stipulations*, § 94, (A promise or agreement with reference to a pending judicial proceeding,

made by a party to the proceeding or his attorney, is binding without consideration. By statute or rule of court such an agreement is generally binding only ... if it is made or admitted in the presence of the court ...). Oral stipulations of the parties in the presence of the court are generally held to be binding, especially when acted upon or entered on the court record, and need not be signed by the parties or their attorneys. 73 Am.Jur.2d *Stipulations*, § 3 (1974). While no particular form of stipulation is required when made orally in open court except that it be noted in the minutes, its terms must be definite and certain in order to render the proper basis for a judicial decision. *Id.*

■ For a contract to be enforceable, it must be possible to ascertain the full meaning with reasonable certainty. An agreement must be sufficiently definite to enable a court to give it an exact meaning. *Deadwood Lodge No. 508, etc. v. Albert*, 319 N.W.2d 823 (S.D.1982). However, absolute certainty is not required; only reasonable certainty is necessary. 17A Am.Jur.2d *Contracts*, § 196 (1991).

■ The oral agreement made on the record covered the major areas that were at issue in this action. The material terms of the agreement were addressed in definite and certain language. It was sufficiently definite to enable the court to give it an exact meaning. Minor points implementing the agreement, though not listed, can be implied as necessary to carry out the terms of the agreement. It is clear that the parties intended to enter into this agreement and be bound by it. The stipulation was definite and certain as to be a binding agreement and to show that there was a meeting of the minds. The trial court properly concluded that the March 12, 1992, stipulation made on the record was binding.

## ISSUE TWO

WAS THE ORAL AGREEMENT TO TRANSFER OWNERSHIP OF REAL ESTATE WITHIN THE STATUTE OF FRAUDS THUS REQUIRING IT TO BE IN WRITING TO BE ENFORCEABLE?

Ben claims that the stipulation entered on the record requiring him to transfer his one-third interest in the farm is invalid because it is not in writing. Under SDCL 53–8–2(3) an agreement for sale of real estate or an interest therein must be in writing.

 Several courts have addressed the issue of in-court stipulations and the statute of frauds. The general rule is that the statute of frauds has no application to an in-court settlement stipulation entered on the record. *See, Thomas v. Thomas,* 5 Ohio App.3d 94, 449 N.E.2d 478 (1982). A stipulated judgment made in open court is not within the statute of frauds even though its subject matter was real property. *Sparaco v. Tenney,* 175 Conn. 436, 399 A.2d 1261 (1978); *Savage v. Blanchard,* 148 Mass. 348, 19 N.E. 396 (1889); *Deer v. Deer,* 29 Wash.2d 202, 186 P.2d 619 (1947). *See also, Perley v. Bailey,* 89 N.H. 359, 199 A. 570 (1938); *In re Dolgin Eldert Corporation,* 31 N.Y.2d 1, 334 N.Y.S.2d 833, 286 N.E.2d 228 (1972); *Jackson v. Jackson,* 14 Md.App. 263, 286 A.2d 778 (1972); *Wray v. Langston,* 380 So.2d 1262 (Miss.1980).

This stipulation was made in open court under the supervision of the trial judge. A court reporter made a contemporaneous record, thus memorializing the agreement. The aim of the statute of frauds is to prevent fraud and to assure that the asserted agreement was in fact made. We hold that the statute of frauds has no application to the present situation where the stipulation was made in open court and placed on the record.

### ISSUE THREE

DID BEN AUTHORIZE HIS COUNSEL TO ENTER INTO A STIPULATION AND AGREEMENT ON HIS BEHALF?

Ben seeks to set aside the stipulation alleging duress, mistake, lack of specificity and completeness, violation of the statute of frauds and lack of communication between the trial judge and Ben to ascertain that he understood and agreed with the settlement. All sides filed lengthy affidavits in support of their position.

 Affidavits, although made under oath, are ordinarily not considered competent evidence. *Id.; Dixon v. Dixon,* 423 N.W.2d 507 (S.D.1988). Affidavits are unsatisfactory as forms of evidence; they are not subject to cross-examination, combine facts and conclusions and, unintentionally or sometimes even intentionally, omit important facts or give a distorted picture of them. *Bloom v. Bloom,* 498 N.W.2d 213 (S.D.1992). Nevertheless, the ultimate determination of whether issues of fact should be resolved by affidavit is left in the sound discretion of the trial court. SDCL 15–6–43(e) provides "[w]hen a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions."

> Every party, as a matter of right, is not entitled to oral testimony on every motion or on every issue of fact. Obviously, there are many cases where no oral testimony need be received and the trial court, in the exercise of sound discretion, may permit the trial of an issue of fact, involved in the motion, on non-oral testimony. However, the trial court in exercising this discretion must be cautious to prevent a circumvention of justice.

*Bloom,* at 215; *Dixon,* 423 N.W.2d at 510. Where the facts are complicated or the affidavits so conflicting as to render cross-examination essential, then the desirability of expeditious procedure must give way to a more formal hearing. *Bloom,* at 215; *Dixon, supra,* at 511.

At best, the affidavits indicate Ben did not participate in the negotiations process which was handled by his counsel. Ben's present counsel conceded before the trial court and this Court that the former counsel for Ben had been authorized to enter into negotiations and settle the case. The trial court's statement that it may be necessary to advise Ben of his Miranda rights is not duress. *See,* SDCL 53–4–3.

Based on the affidavits submitted and counsel's concession, there were no questions of fact. Ben was represented by counsel whom he had given his authorization to settle

the lawsuit. The stipulation on the record settled both the probate accounting and the related civil suit. Ben now states that he does not like the settlement his counsel reached. That is not a sufficient ground on which to vacate the settlement.

The trial court had before it the various sworn accounts, the discovery, and related pleadings and affidavits. There was no question of fact for the trial court and it was not an abuse of discretion for the trial court to determine the issues on non-oral testimony. The trial court was not erroneous in concluding that the stipulation should be enforced.

The remaining issues are frivolous and are not addressed. The judgment of the trial court is affirmed.

MILLER, C.J., and WUEST, HENDERSON, and SABERS, JJ., concur.

TUCKER, Circuit Judge, for AMUNDSON, J., disqualified.