1998 SD 4

Delores KROUPA, Plaintiff,

v.

Marvin KROUPA, Defendant and Appellant,

and

Greg Kroupa and Diane Kroupa, Defendants and Appellees,

and

Edwin Kroupa, Robert Kroupa, Marie Kroupa, and Cheryl M. Younkin, Defendants.

No. 19888.

Supreme Court of South Dakota.

Argued Oct. 21, 1997.

Decided Jan. 14, 1998.

James C. Roby of Green, Schulz, Oviatt, Cummings & Linngren, Watertown, for defendant and appellant.

Brent A. Wilbur of May, Adam, Gerdes & Thompson, Pierre, for defendant and appellee Greg Kroupa.

Kimberley A. Mortenson of Mortenson Law Offices, Ft. Pierre, for defendant and appellee Diane L. Kroupa.

MILLER, Chief Justice.

[¶1.] In this appeal, Marvin Kroupa asserts that the trial court erred in ruling that it lacked jurisdiction over the trust property

interests of Diane Kroupa and Cheryl Younkin when it earlier finalized a settlement agreement. In the alternative, Marvin argues that, even if the court did lack jurisdiction, it erred in vacating only a portion of the settlement agreement. We affirm in all respects.

## FACTS

[¶ 2.] The Kroupa family is involved in an extensive farming and ranching operation in various South Dakota counties, including Brule. Otto Kroupa and his wife Marie started the operation in the 1950s. They had one son, Edwin. Edwin and his wife Delores had five children: Marvin Kroupa, Greg Kroupa, Robert Kroupa, Diane Kroupa, and Cheryl Younkin. Edwin assisted Otto in the farming and ranching operation, and they were later joined by Edwin's sons Marvin, Greg, and Robert. Otto died on January 7, 1988, leaving part of his estate to the Otto Kroupa Trust which he created in his will.[1] Marie was appointed executrix of Otto's estate and Edwin was named trustee of the Otto Kroupa Trust.[2]

[¶ 3.] In November of 1991, Delores filed for divorce from Edwin. While the divorce was pending, she filed a second lawsuit making claims against Marie, Edwin, Marvin, Greg, and Robert. In the second lawsuit, Delores alleged that Edwin, Marvin, Greg, and Robert had become partners in the farming and ranching operation even though no formal partnership was ever formed. She claimed that the others had conspired to exclude her from the operation. She sought compensatory and punitive damages on four separate grounds: (1) alleged fraud by Marie, Edwin, Marvin, Greg, and Robert; (2) conversion by Greg; (3) for an accounting of the family operation; and (4) civil assault and battery against Edwin. This lawsuit was ultimately consolidated with the divorce action.

[¶ 4.] After the two suits were consolidated, Robert made a motion, in which Marvin joined, seeking to join Diane and Cheryl as additional parties defendant based on their status as devisees, legatees, and beneficiaries under Otto's last will and testament. Delores then amended her complaint to add Diane and Cheryl as defendants. Diane answered the amended complaint and asserted that it failed to state a claim upon which relief could be granted. She also admitted that she owned an interest in real property in Brule County, South Dakota.

[¶ 5.] Robert filed and served an answer and cross claim to the amended complaint. The cross claim was against all of the defendants and included a claim for compensatory and punitive damages against Greg based on conversion. Robert agreed that an accounting should be had and that, if a partnership did indeed exist, it should be dissolved and its assets distributed. He also claimed that Diane and Cheryl had no rights or interest in any partnership property.

[¶ 6.] Marvin also responded with an answer and cross claim. He agreed that a partnership existed and should be dissolved, and also that an accounting should be had. His cross claim alleged conversion against Greg and claimed that Diane and Cheryl had no interest in any of the property.[3]

[¶ 7.] The consolidated cases were set for trial starting on November 27, 1995. On that date, Delores, Edwin, Greg, Robert, and Marvin all personally appeared. Marie and Cheryl did not appear. Although Diane did not appear, she submitted a stipulation to the court.[4]

[¶ 8.] The parties who appeared entered into a settlement agreement, which was placed on the record. Part of the settlement provided that Diane and Cheryl would retain their real estate interests which they had

---

1. The trust consisted of five parcels of land totaling approximately 573 acres of the 12,000 total acres used in the family farming and ranching operation. Edwin held the land in trust for the duration of Marie's life, with the remainder to go to Diane, Cheryl, Marvin, Greg, and Robert.

2. At the time of the present action, the probate of Otto's estate had not been completed.

3. Marie and Edwin filed answers *pro se*. Cheryl did not file an answer.

4. Diane's stipulation listed several parcels of land that Otto and Marie had gifted to her.

received by gift during Otto's lifetime. There was some discussion with the trial court as to whether or not Diane's and Cheryl's permission was needed to include their interests in the trust property in the settlement. Upon Marvin's request, the court ordered that their permission was not needed as they failed to appear even though they had sufficient notice of the issues.

[¶ 9.] On March 20, 1996, Diane filed objections to the settlement and proposed judgment based thereon, arguing lack of jurisdiction by the trial court. Specifically, she alleged that the court was without jurisdiction to distribute assets of the Otto Kroupa Trust or Estate as she had no notice that the assets of the Trust or Estate were subject to the court's judgment, and also because the estate and the trustee were not parties to the lawsuit. The final decree of divorce and judgment was filed April 23, 1996. Diane made a motion to vacate a portion of the judgment for the reason that the court lacked jurisdiction over the land in the Otto Kroupa Trust or Estate. Marvin, Robert, and Greg all resisted the motion. Diane's motion was granted and the trial court vacated that portion of the judgment that pertained to Diane's and Cheryl's interests in the Otto Kroupa Trust and Estate. Marvin filed a motion, in which Robert joined, for reconsideration and notice of hearing. This motion was denied and Marvin appeals. We affirm.

## STANDARD OF REVIEW

[¶ 10.] The trial court's holdings that it lacked jurisdiction and its decision to vacate a portion of the judgment involve questions of law. We therefore apply a de novo review. *Moss v. Guttormson*, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17. Accordingly, the issues are fully reviewable and we afford no deference to the conclusions reached by the trial court. *Kent v. Lyon*, 1996 SD 131, ¶ 15, 555 N.W.2d 106, 110.

## DECISION

[¶ 11.] **I. Whether the trial court erred in determining that it was without jurisdiction to distribute the assets of the Otto Kroupa Trust.**

[¶ 12.] Marvin argues that the trial court erred when it ruled it did not have jurisdiction over Diane's and Cheryl's interests in the trust property. We disagree.

[¶ 13.] Marvin argues that Diane and Cheryl were given notice that their interests in the property used in the family operation were going to be part of the litigation. He claims that the pleadings stated that the entire farming and ranching operation was to be included in the litigation. He also claims that the executrix and the trustee do not have to be specifically named in their representative capacities in the pleadings.

[¶ 14.] SDCL 15-6-60(b)(4) states that upon proper motion a court can relieve a party from a final judgment if "[t]he judgment is void[.]" We have held that a judgment is void if "the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law." *Crowley v. Trezona*, 408 N.W.2d 332, 333 (S.D. 1987) (citation and internal quotations omitted).

[¶ 15.] We hold that the trial court correctly determined it lacked jurisdiction over the assets in the Otto Kroupa Estate and Trust, and thus it properly relieved Cheryl and Diane from the judgment. The trial court also correctly concluded that the pleadings did not afford Diane and Cheryl proper due process protection.

[¶ 16.] SDCL 15-6-8(a) states, in relevant part:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim or third-party claim, shall contain
>
> (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and
>
> (2) a demand for judgment for the relief to which he deems himself entitled.

In reviewing the pleadings, we find no claims made in any manner whatsoever against the Otto Kroupa Trust, or even a demand for relief from Diane or Cheryl so as to invoke the court's jurisdiction over the trust property.

[¶ 17.] We have held that "[t]he purpose of pleadings is to establish the issues to be tried and to advise the opposing party of the allegations and evidence that must be met." *Gross v. Gross*, 355 N.W.2d 4, 8 (S.D. 1984) (citation omitted). A complaint need not be set out in great detail, but it must provide "fair notice" of the alleged claim "so as to allow the adverse party an opportunity to make an adequate response." *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 197 (Iowa 1985) (citations omitted); see also *Williams v. State*, 405 N.W.2d 615, 620–21 (N.D.1987). The notice provided to Diane and Cheryl failed in those regards.

[¶ 18.] Diane based part of her motion on the fact that neither Otto, Marie as executrix, Edwin as trustee, nor Diane as beneficiary of the trust were named parties in the lawsuit. Marvin argues that it is not legally fatal to not specifically plead the capacities of the parties being sued. Marvin is correct in relying on SDCL 15–6–9(a) for this proposition. It states, in relevant part: "It is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity[.]" Thus, it was not fatal per se to not name the parties in their representative capacities, however, SDCL 15–6–9(a) is not dispositive of the issue. The parties must still be given "fair notice" of what the litigation entails. See 59 AmJur2d Parties § 244 (1987); see also *Northrup*, 372 N.W.2d at 197; Williams, 405 N.W.2d at 620–21. When capacity is not alleged, the complaint or cross claim must, in some way, give "adequate notice of the nature of the suit and the fact that recovery [is] sought from the assets of the estate[.]" 31 AmJur2d Executors and Administrators § 1298 (1989).

[¶ 19.] We next examine the pleadings to see if "fair notice" was given to Diane and Cheryl to apprise them that the Otto Kroupa Trust property would be involved in the litigation. The main thrust of Delores' second lawsuit is of a partnership dissolution.[5] Diane and Cheryl are not named as partners, nor are there allegations of any nature made against either of them. Paragraph 8 of the amended complaint does allege: "That Defendants Diane L. Kroupa and Cheryl M. Younkin have claims of ownership which pertain to some of the real estate which has been used and operated by the parties and are includes [sic] as parties defendant in order to vest jurisdiction over them[.]"[6] However, nowhere is Otto, the Otto Kroupa Trust, or any trust property mentioned to be involved in the case.

[¶ 20.] Marvin also argues that Diane and Cheryl had notice of the claims against the trust because they were joined as additional parties for the reason that "they had an interest in some of the operation's property as legatees, devisees and beneficiaries under the Last Will and Testament of their deceased grandfather Otto M. Kroupa." The motion to join parties was never served on Diane or Cheryl. Furthermore, the amended complaint never provided notice that Diane and Cheryl were being sued as "beneficiaries" of the trust, and it never mentioned the trust in any manner.

[¶ 21.] Likewise, the amended cross claims of Robert and Marvin do not make any claims against Diane, Cheryl, or the trust. Both Robert and Marvin alleged that: "Defendants Cheryl M. Younkin and Diane L. Kroupa have no right, title or interest in, or claim against, any property, real or personal, of this Defendant or of the partnership." Neither made any claim against any interests of Diane or Cheryl. They both merely sought an accounting of the partnership, a dissolution of the partnership, and a distribution of the partnership assets. Nowhere is any notice given that Diane's or Cheryl's interests in the Otto Kroupa Trust are to be involved in the case. It is hard to imagine how these amended cross claims in a partnership dissolution could put Diane or Cheryl on notice that their trust property was involved, especially when it is specifically

---

5. The first lawsuit being a divorce between Edwin and Delores, and Diane and Cheryl obviously not being parties thereto, it is not considered here.

6. Diane and Cheryl are only mentioned two other times in the amended complaint. In paragraph 1, it states their places of residence and in paragraph 2, it merely states that they are the children of Delores and Edwin.

stated that neither one has any interest in any property of the partnership.

[¶ 22.] We conclude that there was not sufficient notice to Diane or Cheryl that their interests in the trust property would be affected. Thus, the trial court was correct in concluding that it lacked jurisdiction to distribute the trust property, and that the settlement was void. *See Cooley v. Fredinburg,* 144 Or.App. 410, 927 P.2d 124, 128 (1996) (holding that "[i]f the notice of the proposed relief is so defective or lacking that it does not satisfy the requirements of due process, the court is deprived of jurisdiction to enter an order arising out of such a defective procedure.") (citing *Hood River County v. Dabney,* 246 Or. 14, 423 P.2d 954, 957 (1967)).

[¶ 23.] **II. Whether the trial court erred by vacating only a portion of the judgment based on a settlement agreement, rather than vacating the whole judgment.**

[¶ 24.] Marvin, in the alternative, argues that the trial court erred in vacating only a portion of the judgment, rather than the entire judgment. He claims that his reasonable expectations were not fulfilled because he did not receive Diane's and Cheryl's interests in the trust property. We disagree.

[¶ 25.] "The law favors the compromise and settlement of disputed claims." *Johnson v. Norfolk,* 76 SD 565, 572, 82 N.W.2d 656, 660 (1957) (citations omitted). The general rule as to a defective compromise and settlement has been stated as: "Unless a defective compromise and settlement is capable of being reformed so as to comply with the reasonable expectations of the parties, the usual effect of invalidation of a compromise and settlement is to restore the parties to their antecedent positions." 15A Am.Jur.2d Compromise and Settlement § 40 (1976); *see also Harrell v. Nash,* 192 Okla. 95, 133 P.2d 748 (1942). We must thus determine if, by vacating only a portion of the settlement agreement, the reasonable expectations of the parties were fulfilled.

[¶ 26.] As has been already noted, the settlement process in this matter was long and drawn out, and involved numerous parties and over 10,000 acres of land. During the course of the settlement, the following exchange concerning the trust property took place between the trial court, Marvin, and Marvin's attorney:

Court: The other half that's still in Otto's trust, you need the agreement of your two sisters now. That will be transferred to you. Isn't that right Mr. Roby [Marvin's attorney].

Mr. Roby: Yes.

Court: And we already, from the presentation before, we had the agreement of everyone else involved here that you are going to get the land.

Marvin: Yes.

Court: So, that's the additional item I wanted to point out. That you, in order to make that work, we need the agreement of your two sisters to transfer that to you.

Marvin: Yes.

[¶ 27.] A short time later, the trial court ordered, upon Marvin's request, that Diane's and Cheryl's interests in the trust be transferred without their approval, since they had notice, yet failed to appear. Marvin now points to that portion of the settlement negotiation where the court decided to transfer Diane's and Cheryl's interests as evidence that the whole agreement was dependent on their transferring their interests in the trust property to him:

Mr. Roby: I would further propose since Cheryl and Diane both decided not to come here but they have been made parties, I think the issues are of sufficiency and we're in court in the matter that we'll try to get their agreement, but we ought to have this same authority, too, where they shouldn't be allowed to hold up settlement and if they refuse to sign quitclaim deeds that perhaps the court would also entertain a motion to have the clerk sign deeds for them as we have discussed in this settlement.

\* \* \* \* \* \*

The Court: [ ... ] So, that will be the determination of the court, that this was the time to litigate these issues, they have been agreed to and the parties are in default who have not appeared or are not

objecting or contesting these other issues. Nevertheless, the agreement is subject to their interests being transferred in this, I think we're talking about the Otto Kroupa Trust property.

Mr. Roby: Yes

The Court: All right. And, I want everybody to understand that that is part of the whole agreement that everyone has agreed to. And someone, first of all, is going to try to contact them[.]

The trial court later determined that it erred in transferring the trust property because Diane and Cheryl did not receive proper notice. As discussed above, we have also determined that proper notice was not given.

[¶ 28.] At the hearing on Marvin's motion for reconsideration, he presented the same argument to the trial court. The trial court stated that:

[A]s I look at the agreement, you know, I don't really—I don't really see that the parties presented this agreement and said, you know, up to that point, well, you know, if we don't get [Diane's and Cheryl's] agreement we're going to come back and relitigate this whole thing.[7]

While the trial court's determinations are not dispositive of this issue, upon our review of the entire record, we agree with it. There is some language that indicates that the whole agreement was contingent upon obtaining Diane's and Cheryl's consent but, when the settlement is examined as a whole, it is apparent that the parties knew that Diane and Cheryl needed to consent to the transfer of the trust property. This was a long and complicated settlement and as a means of making it easier, Marvin requested that the trial court transfer Diane's and Cheryl's interests. Marvin's attorney noted, as did the trial court, that someone would try to contact Diane and Cheryl and get their consent to transfer their interests. As the trial court pointed out, everyone knew that their consent was needed, and no one stated that the whole agreement would fall apart if their consent was not obtained.

7. Also, in its memorandum opinion on Diane's motion to vacate a portion of the judgment, the trial court noted: "Having reviewed the entire nature of these proceedings, it appears to this court that the parties who presented the stipulation appreciated the fact that Cheryl and Diane had interests in these properties which could not be divested without their consent."

[¶ 29.] *Marvin relies on Mapp v. Snitker,* 449 S.W.2d 857 (Tex.Civ.App. 1969), for the proposition that the court cannot contract for the parties, and thus the whole judgment should be set aside. Even were we inclined to adopt its rationale, Mapp involved a situation which is significantly distinguishable from the present case. Mapp involved only two parties and the court reduced one party's property interests from one-fourth as decided in the settlement agreement, to one-eighth. On appeal, it was decided that the court could not change the parties' agreement and subsequently bind the parties to the court's judgment rather than their own. *Id.* at 858–59.

[¶ 30.] In this case, by vacating only a portion of the judgment, the court is not contracting for the parties and the parties are not being forced to accept the court's decision over their own. Marvin knew that he needed his sisters' approval to acquire their interests in the trust property, and there is nothing preventing him from trying to obtain their approval now. Marvin received what he reasonably expected in the settlement agreement, that is, a right to his sisters' trust property if they approve. This was essentially a partnership dissolution and Diane and Cheryl were not a part of the partnership. Marvin knew this and knew that he could not obtain any interests in their land without their approval.

[¶ 31.] As noted above, the law favors compromise and settlement and we will uphold such agreements if the parties' reasonable expectations are protected upon reformation. Because the parties got what they bargained for, we agree that the entire judgment should not be vacated. To wholly vacate the agreement would be to send the parties back for further litigation which is inappropriate and unnecessary. *See Davy v. Davy,* 98 A.D. 630, 90 N.Y.S. 242, 244 (1904).

[¶ 32.] Affirmed.

[¶ 33.] AMUNDSON, J., concurs.

[¶ 34.] KONENKAMP, J., concurs in part and concurs in result in part.

[¶ 35.] GILBERTSON, J., concurs on Issue I and joins the dissent of SABERS. J., on Issue II.

[¶ 36.] SABERS, J., dissents in part and concurs in part.

KONENKAMP, Justice (concurring in part and concurring in result).

[¶ 37.] Although I agree with the majority opinion on the jurisdiction question, I write specially on Issue II because both the majority and the dissent misemploy our review standards and consequently fail to give appropriate deference to the trial court's decision to enforce the parties' settlement.

[¶ 38.] Settlements made in open court are generally binding, especially when entered on the record. *In re Estate of Eberle,* 505 N.W.2d 767, 770 (S.D.1993). Trial courts possess inherent or equitable power to summarily enforce agreements to settle pending cases. See, e.g., *Murchison v. Grand Cypress Hotel Corp.,* 13 F.3d 1483, 1486 (11th Cir.1994); *United States v. Hardage,* 982 F.2d 1491, 1496 (10th Cir.1993); *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir. 1988); *Callie v. Near,* 829 F.2d 888, 890 (9th Cir.1987); *Mid–South Towing Co. v. Har-Win, Inc.,* 733 F.2d 386, 389–90 (5th Cir. 1984); *Ozyagcilar v. Davis,* 701 F.2d 306, 308 (4th Cir.1983); *Autera v. Robinson,* 419 F.2d 1197, 1200 (D.C. Cir.1969); *Ballato v. General Electric,* 147 F.R.D. 95, 97 (E.D.Pa.1993). Power to enforce a settlement is founded in the policy favoring amicable resolution of disputes and avoiding costly, time-consuming trials. See generally *Erickson v. Webber,* 58 S.D. 446, 237 N.W. 558 (1931); cf. *Pugh v. Super Fresh Food Markets, Inc.,* 640 F.Supp. 1306, 1307 (E.D.Pa.1986) (citations omitted).

[¶ 39.] So long as there is a clear offer and acceptance of the compromise and a meeting of the minds on the essential terms of the agreement, oral settlement agreements made in the presence of the trial court are enforceable as binding contracts. *Eberle,* 505 N.W.2d at 770; *Spercel v. Sterling Indus., Inc.,* 31 Ohio St.2d 36, 285 N.E.2d 324, 326 (1972), cert. denied, 411 U.S. 917, 93 S.Ct.

1550, 36 L.Ed.2d 309. "Minor points implementing the agreement, though not listed, can be implied as necessary to carry out the terms of the agreement." *Eberle,* 505 N.W.2d at 770. Even mutual mistakes in making a compromise will not necessarily vitiate a settlement agreement. *Fada v. Information Sys. & Networks Corp.,* 98 Ohio App.3d 785,792, 649 N.E.2d 904, 908 (1994). We recently stated:

> For a contract to be enforceable, it must be possible to ascertain the full meaning with reasonable certainty. An agreement must be sufficiently definite to enable a court to give it an exact meaning. *Deadwood Lodge No. 508 Benev. and Protective Order of Elks of U.S. of America v. Albert,* 319 N.W.2d 823 (S.D.1982). However, absolute certainty is not required; only reasonable certainty is necessary. 17A AmJur2d Contracts § 196 (1991).

*Eberle,* 505 N.W.2d at 770. "While an attorney's authority to settle must be expressly conferred, the existence of the attorney of record's authority to settle in open court is presumed unless rebutted by affirmative evidence that authority is lacking." *Szymkowski v. Szymkowski,* 104 Ill.App.3d 630, 60 Ill.Dec. 310, 312, 432 N.E.2d 1209, 1211 (1982)(citing cases). See also *Eberle,* 505 N.W.2d at 770. Once counsel agree on the necessary terms for a binding settlement in court with authority from their clients, "a contract is formed even though they intend to adopt a formal document with additional terms at a later date." *Capek v. Mendelson,* 821 F.Supp. 351, 357 (E.D.Pa.1993)(quoting *Courier Times, Inc. v. United Feature Syndicate, Inc.,* 300 Pa.Super. 40, 445 A.2d 1288, 1295 (1982)). The "four corners" of the transcript may reveal the parties in fact reached a complete, binding agreement in resolution of their lawsuit. *Hyde Park Union Church v. Curry,* 942 F.Supp. 360, 364 (N.D.Ill.1996).

[¶ 40.] Under our settled rules of construction, "a court should, if possible, ascertain and enforce the mutual intention of the parties as set forth in their agreement." *Steffens v. Peterson,* 503 N.W.2d 254, 258 (S.D.1993). Even when parties change their minds between the time of oral agreement in court and when it is to be reduced to writing,

the settlement is nonetheless binding. *Gross*, 396 FSupp at 375. Voluntary settlements and stipulations "entered into cannot be repudiated by either party and will be summarily enforced...." *Cummins Diesel Michigan, Inc. v. The Falcon*, 305 F.2d 721, 723 (7th Cir.1962)(collecting Illinois cases); see also *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1015 (D.C. Cir.1985); *Autera*, 419 F.2d at 1201 n. 17. Trial courts may enforce only completed settlement agreements, however. *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir. 1984); *Ozyagcilar*, 701 F.2d at 308. "Whether the court may summarily enforce such an agreement or should conduct an evidentiary hearing on the disputed issues depends upon the nature of the dispute." *Dankese v. Defense Logistics Agency*, 693 F.2d 13, 15–16 (1st Cir.1982). Summary enforcement of a settlement agreement is improper if substantial factual disputes exist over the terms of the settlement. See *Kukla v. Nat'l Distillers Prod. Co.*, 483 F.2d 619, 622 (6th Cir.1973). On the other hand, an evidentiary hearing may be unnecessary if the trial court was present to hear the parties' agreement when it was made. *Wilson v. Wilson*, 46 F.3d 660, 665 (7th Cir.1995).

[¶ 41.] In this case, was there a binding settlement between the parties in open court? Though both the majority and dissent scour the transcript in their de novo examination of this question, at least part of our review should employ the abuse of discretion standard. Fully acquainted with this litigation and the many issues it involved, the trial judge was in a far better position than we to decide what the parties intended, especially since some of their comments though contradictory were not necessarily irreconcilable.

To the extent the court's power to enforce a settlement agreement falls within the court's role as supervisor of litigation, then, as noted by the Supreme Court in *Pierce v. Underwood*, 487 U.S. 552, 558 n. 1, 108 S.Ct. 2541, 2546 n. 1, 101 L.Ed.2d 490 (1988), this is precisely the type of determination that normally receives a deferential, abuse of discretion review. See also 1 Steven Alan Childress & Martha S. Davis, Standards of Review § 4.01A, at 4–2 (1986)(stating that a district judge's supervision of litigation is a judgment entailing on-the-scene presence and therefore entitled to deference). Therefore, we join with these other circuits and hold that the abuse of discretion standard is the proper guide for our review of a district court's decision to enforce a settlement agreement.

*Id.* at 664.

[¶ 42.] We can focus on inconsistent remarks from the transcript or we may appropriately defer to the trial court's firsthand assessment of what the parties agreed. Not only did the court hear and receive the settlement, but it also participated to the extent of asking numerous questions to tidy up possible loose ends. At many points, the parties were virtually negotiating their settlement in open court as they recited their lengthy oral stipulation. Nonetheless, at the end of their stipulation, the court stated, with the obvious assent of everyone present, "The agreement has been made right now today." It was only suggested after this point that the court could force a transfer if the two sisters refused to give their consent. What the court apparently concluded was that Marvin's effort to obtain Cheryl's and Diane's future interests in the 200 acres of trust property was merely ancillary to the settlement. Marvin had no lawful claim to his sisters' property; indeed, during the pendency of this case he never made any claim to it. He knew he needed their consent to accomplish a transfer. True, the judge commented after the parties' stipulation that to make this part of the agreement work, Cheryl's and Diane's consent was needed, but at no point in the eighty-six pages of transcript in which the agreement is recited did any *party* suggest that the deal was contingent on Marvin obtaining his sisters' interest in the trust acreage.

[¶ 43.] Of course, contract interpretation is reviewed de novo, but sorting out what was agreed from multiple representations and enforcing those essential terms falls under the trial court's supervisory powers and thus should be reviewed under the abuse of discretion standard. With that standard, how

can we say it was against reason and evidence to refuse to negate a complex and extensive settlement because an appurtenant transaction could not be consummated?

A litigant who enters the judicial process through the agency of freely chosen counsel always assumes a certain risk that the result achieved will not be satisfactory. Defeated expectations do not, therefore, entitle the litigant to repudiate commitments made to opposing parties or to the court.

*Petty v. Timken Corp.*, 849 F.2d 130, 133 (4th Cir.1988)(upholding summary enforcement of settlement agreement).

SABERS, Justice (dissenting in part, concurring in part).

[¶ 44.] I dissent on Issue II. The trial court stated not once, but three times that the agreement was contingent upon Cheryl and Diane transferring their property interests. Additionally, the court ruled that if they did not voluntarily transfer those interests, the court would do it for them. When the trial court later correctly decided it was without jurisdiction to affect their interests in the trust property, there was no longer an agreement and it was error to vacate only part of the judgment.

[¶ 45.] When the parties were in court working out their settlement agreement, there was discussion on the record concerning what action the court could take if any party, including Cheryl and Diane, failed to make the transfers which were required under the agreement.

THE COURT: So, that's the additional item I wanted to point out. That you, *in order to make that [land transfers] work, we need the agreement of your two sisters to transfer that to you.*

MARVIN: Yes.

. . .

MR. ROBY: ... I think there's authority, too, for the court, if a party refused to enter into or sign a deed, the court can have the clerk of courts under the statute sign the deeds, and when we walk out of here today we want this binding and the court order that.

COURT: That has been my understanding of the law, yes. So that no matter whom or who wouldn't execute the deed it would be binding upon them and the court would take such action to transfer the titles.

. . .

COURT: ... So, that will be the determination of the court, that this was the time to litigate these issues, they have been agreed to and the parties are in default who have not appeared or are not objecting or contesting these other issues. *Nevertheless, the agreement is subject to their interests being transferred* in this, I think we're talking about the Otto Kroupa Trust property.... All right. And, I want everybody to understand that *that is part of the whole agreement that everyone has agreed to.* And someone, first of all, is going to try to contact them....

(Emphasis added).

[¶ 46.] The court's decision to order the transfer of Cheryl and Diane's interests if their signatures were not voluntarily given is also evidenced in the judgment:

[I]n the event any party refuses to execute such deeds ... then, pursuant to SDCL 15–6–70, the Court shall direct the Clerk of this Court to execute such deeds ... and ... the execution by the Clerk shall have the like effect as if done by the disobedient party.

In the court's memorandum opinion revising the judgment, Judge Anderson acknowledges that his "determination" was to order the transfer of Cheryl and Diane's interests.[8]

8. The concurring opinion states, "At no point in the eighty-six pages of transcript in which the agreement is recited did any party suggest that the deal was contingent on Marvin obtaining his sisters' interest in the trust acreage." This statement is clearly refuted by the portion reproduced here. The trial court stated the agreement was contingent on those transfers—Marvin agreed—Marvin's attorney agreed—Greg's attorney agreed—Robert's attorney agreed—Edwin agreed—not one party objected—not one attorney objected. It could not be more clear that the agreement hinged on the transfer of their interests.

The concurring opinion incorrectly states that the "end of their stipulation" came prior to the discussion of forcing the transfers. This ignores the court's statement *after* that discussion.

[¶ 47.] Judge Anderson's memorandum, coupled with the quoted material, indicates that the parties could rightfully walk out of the courtroom that day thinking that 1) efforts would be made to get Cheryl and Diane to transfer, and if those efforts failed 2) the court would use its power to transfer their interests. Therefore, the majority opinion's statement at ¶ 28 is incorrect and unfair:

> As the trial court pointed out, everyone knew that their consent was needed, and no one stated that the whole agreement would fall apart if their consent was not obtained.

No one had a reason to make any such statement, given the judge's decision that he could and would force the transfers.

[¶ 48.] Vacating part of the judgment undermines the entire agreement and it is therefore error to say "the parties got what they bargained for." Ex. A–1 of Appellant's Brief lists the property deleted from Marvin's share by virtue of the revised judgment. The only authority cited in support of vacating only a portion of the settlement is really no support at all:

> Unless a defective compromise and settlement is capable of being reformed so as to comply with the reasonable expectations of the parties, the usual effect of invalidation of a compromise and settlement is to restore the parties to their antecedent positions.

15A AmJur2d *Compromise & Settlement* § 40, at 813 (1976). As noted, this agreement cannot be reformed to comply with the reasonable expectations of the parties;

> [T]his was the time to litigate these issues, they have been agreed to and the parties are in default who have not appeared or are not objecting or contesting these other issues. Nevertheless, *the agreement is subject to their interests being transferred....* I want everybody to understand that *that is part of the whole agreement that everyone has agreed to....*
> The transcript, and the court's plan to force the transfer of the trust property, further contradicts the concurring opinion's characterization of Diane and Cheryl's interests as "ancillary" and "appurtenant."

9. The concurring opinion correctly states the standards of review for interpreting and enforcing settlement agreements. However, the claim that "sorting out what was agreed upon" is an

therefore, the parties must be restored to "their antecedent positions." Here, that means starting from scratch.

[¶ 49.] Finally,[9] the majority opinion states, "the law favors compromise and settlement...." (¶ 31). I agree; however, the parties should write their own agreement. The effect of partially vacating the judgment is the rewriting of this agreement. It improperly presupposes what the terms of the agreement would have been if it had been established from the beginning that Cheryl and Diane's interests were not to be considered. That is a mistake. "[I]t is not a function of the court to rewrite the parties' agreements." *Hisgen v. Hisgen*, 1996 SD 122, ¶ 17, 554 N.W.2d 494, 499 (citations omitted); see also *Schlosser v. Norwest Bank South Dakota*, 506 N.W.2d 416, 421 (S.D. 1993) (Wuest, J., concurring in part & dissenting in part) ("[A] court cannot make a contract for the parties that they did not make for themselves."); *accord Amdahl v. Lowe*, 471 N.W.2d 770, 777 (S.D.1991) ("[W]e cannot create a contract for the parties which they did not intend."). Without the transfer of Diane and Cheryl's interests, there is no agreement and we should reverse and remand for vacation of the entire judgment.

[¶ 50.] GILBERTSON, J., joins on Issue II.

enforcement rather than interpretation function is wrong. Obviously, one must "sort out what was agreed upon," which is an interpretation function, before one enforces it or even reaches the enforcement function.

While it is true that many jurisdictions review the *enforcement* of settlement agreements under an abuse of discretion standard, the concurring opinion incorrectly lumps together "sorting out what was agreed from multiple representations" and "enforcing those essential terms." While the latter may fall under the court's supervisory powers and is thus reviewed under the abuse of discretion standard, "sorting out what was agreed upon" is synonymous with "contract interpretation" and should be reviewed de novo. *Alverson v. Northwestern Nat'l Cas. Co.*, 1997 SD 9, 559 N.W.2d 234.